Battle, J.
 

 In the pleadings, and in the argument of the counsel, it is assumed that the testator, Thomas Jerkins, died intestate as to his real estate. The reason of this is, that though he owned many tracts and parcels of land at the time of his death, in the year 1855, yet they were purchased after his will was made, which was in the year 1829, and therefore did not come within the operation of the act of 18M, ch. 88., sec. 8, which declares i! that every will shall be construed with reference to the real and personal estates comprised in it, to speak and take effect, as if it had been executed immediatey before the death of the testator or testatrix; unless a
 
 *209
 
 contrary intention shall appear by the will.” This Court had decided in the case of
 
 Battle v. Speight,
 
 9 Ired. Rep. 288, that this act did not apply to any will executed before its passage, and the parties to this cause were right in treating the question as settled. But there is another chapter of the act of 1844, which has an important bearing upon the case now before us, and is, in our opinion, decisive of it. The chapter to which we allude, is the 51st, which provides in the first section, “ that where any person shall die intestate, who had in his or her life-time advanced to any of his or her children personal property of what nature or kind soever, of value more than a distributive share of the personal estate of said intestate, said child or children, or those legally representing them, shall, in the division of the real estate of the said intestate, if there be any, be charged with the excess in value which he or she has received as aforesaid, over and above an equal distributive share of said personal estate, and the said excess shall be a charge upon the share or shares of the real estate of such child or children as have been excessively advanced, as aforesaid.” The second section enacts,
 
 “
 
 that where any person shall die intestate, seised and possessed of any real estate, who had in his or her life-time settled any real estate on any child or children of said intestate, of more value than equal to the share which shall descend to the other children of the intestate, such child or children, or their legal representatives, shall, in the distribution of the personal estate of the said intestate, if there be any, be charged with the excess in value of the said real estate settled as aforesaid, over and above the share which shall descend to the other children ; and the said excess in value shall be a charge upon the shares of the personal estate of the child or children having real estate settled on him or her, as aforesaid.” The provisions of the act of 1844 were subsequently revised, and are contained, substantially, in the Rev. Code ; (see ch. 38, sec. 2, and eh. '64, sec.-2,) but as the testator died before that Code went into operation, we have referred to the language of the original act.
 

 Under the English statute of distributions, as well as under
 
 *210
 
 our act on that subject, it has always been held that no advancements were to be accounted for except in cases of total intestacy. See
 
 Walton
 
 v.
 
 Walton,
 
 14 Ves. Jun. 324;
 
 Brown
 
 v. Brown, 2 Ired. Eq. 309. A different rule was laid down by the Supreme Court, under its former organization, in the case
 
 of Norwood
 
 v.
 
 Branch,
 
 2 Car. Law Reps. 599, upon the construction of the acts of 1784, and 1795, (see 1 Rev. Statutes, ch. 38, sec. 1, Eule 2,) regulating the descent of real estate, and providing for bringing advancements of land into hotchpot. That case was, however, brought into doubt by this Court in deciding the above-mentioned case of
 
 Brown
 
 v.
 
 Brown,
 
 and was entirely over-ruled in the subsequent one of
 
 Johnston
 
 v.
 
 Johnston, 4
 
 Ired. Eq. 9. In the latter case, the Court felt itself at liberty, upon the strength of the principle established by the before-recited act of 1811, to decide that advancements in land by a father, are not to be brought into hotchpot, and accounted for in the division among his children, of his real estate, unless the father dies totally intestate.
 

 In the present case, the father died after the passage of the act of 1811, intestate as to his real estate, but testate as to his personal property; and the question arises, whether the act applies, so as to compel such of the testatator’s children as had received from him advancements in land, to account for them in the division among all his children, of his real estate. We answer, unhesitatingly, in the negative; and we are saved the trouble of entering now into the process of reasoning, by which we are brought to this conclusion, because it has been already clearly and forcibly expressed in the case of
 
 Johnston
 
 v.
 
 Johnston,
 
 to which we have just referred. It is there said, that t£ the Legislature intended an equality between the children, where the parent did not himself produce inequality. Therefore, when the parent dies intestate, the act operates. But where he disposes of his own estate by will, the law does not interfere; and if he disposes of a part only, the law does not interfere with his dispositions, as far as he made them by his will, but suffers that inequality to stand, and divides the residue equally. Suppose a father to have two sons, and to the el
 
 *211
 
 der lie devises land worth £1000, and to the younger, land worth £500, and personalty worth £500, and leaves personalty undisposed of to the value of £1000, and land undisposed of to the value of £500. It could not be possible the Legislature meant the second son should have all the land descended,making his share of the realty £1000, as well as his brother’s, and then that they should divide the £1000 personalty equally, as it is admitted, notwithstanding his legacy of £500, they must do in respect to the personalty. So the very giving to one son by the will more than to another, shows that the parent, for reasons satisfactory to his own mind, intended a greater bounty to the one than the other ; and that intention the law did not mean to counteract. It directs an equality, because it presumes the parent would naturally wish it. But here the parent creates the inequality by his own will, and the law never intended to thwart him.” These remarks, in extracting which we have corrected a misprint in the published Reports, show conclusively that
 
 Norwood
 
 v.
 
 Branch
 
 was decided upon a mistaken construction of the act of 1781, and 1795, and that those acts were never intended to apply to a case of partial intestacy as to real estate. The process of reasoning is equally strong to prove that the act of 1811 was designed to operate only on cases of total intestacy, both as to realty and personaltju The act makes both kinds of estate one fund in respect to advancements, and is expressly confined to cases where “ any person shall die intestate, who in his or her lifetime advanced to any child personal property,” &c., and “ where any person shall die witestate, seized and possessed of any real estate, who in his or her life-time settled any real estate on any child,” &c. The intestacy here spoken of, must mean a total intestacy as to both real and personal estate, because a partial intestacy as to both, considered as one fund, caused by a total intestacy as to one and not as to the other, would manifestly produce the same inequality by the will of the parent, as if it were caused by a partial intestacy as to each kind of property. The act was never intended to interfere in any case where the parent himself had by his will
 
 *212
 
 produced an inequality by giving to one of his children either land or chattels, and not to the others. But where he dies totally intestate as to all his property of every kind, then the act provides for an equality, as near as it can, by directing that such of the children as have been advanced by the intestate in his life-time, in either realty or personalty, shall account for the advancement in the division of both.
 

 "We conclude, then, that as Thomas Jerkins did not die altogether intestate, the plaintiff, his son, cannot call upon the feme defendants, his daughters, to bring into hotchpot the lands which had been settled upon them by their father in his life-time. This view of the case makes it unnecessary for us to consider whether the defendant, Mrs. Mitchell, was advanced in such a manner as would have made her accountable had her father died without leaving a will, or whether in such a case the defendant, Mrs. Mcllwain, would have had to account for one-half, or the whole of the land given to her and her husband, and the survivor in fee. The plaintiffs may have a decree for the partition of the lands mentioned in the pleadings upon the principal announced in this opinion.
 

 Per Curiam, Decree accordingly.